IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CATHERINE BAKER, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-cv-01108-MN |
| CRODA INC. f/k/a CRODA, INC., | ) ) | |
| Defendant. | ) | |

## CRODA INC.'S RENEWED MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (# 2067)
Miranda N. Gilbert (# 6662)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200
knachbar@morrisnichols.com
mgilbert@morrisnichols.com
*Attorneys for Defendant*

OF COUNSEL:

Stephen A. Swedlow
Athena D. Dalton
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL  60606
(312) 705-7400
stephenswedlow@quinnemanuel.com
athenadalton@quinnemanuel.com

August 27, 2021

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................1

II.   Summary of Argument .......................................................................1

III.  FACTUAL BACKGROUND ................................................................2

IV.  LEGAL STANDARD ..........................................................................4

V.   ARGUMENT ......................................................................................4

     A.    Delaware Law Governs Plaintiff's Claims ................................4

     B.    Under Delaware Law, All Claims Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim ......................................6

         1.    All Claims Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Has Not Alleged a Compensable Injury ........................................................8

         2.    Plaintiff Has Not Stated a Medical Monitoring Claim ...........................................................10

         3.    Plaintiff Has Not Stated a Claim for Ultrahazardous Activity ........................................................................13

         4.    Plaintiff Has Not Stated a Claim for Public Nuisance and Lacks Standing to Bring the Claim. .......................14

         5.    Plaintiff Has Not Stated a Claim for Private Nuisance ..........................................................15

         6.    Plaintiff Has Not Stated a Claim for Negligence ...........................17

         7.    Plaintiff Has Not Stated a Claim for Willful or Wanton Conduct ..........................................................17

     C.    Under New Jersey Law, All Claims Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim ....................................18

VI.  CONCLUSION ...................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Rumsfeld*,
　450 F. Supp. 2d 440 (D. Del. 2006) ............................................................................................4

*Alderman v. Clean Earth*,
　2007 WL 1334565 (Del. Super. Ct. Apr. 30, 2007),
　*aff'd sub nom.*, 954 A.2d 909 (Del. 2008) .............................................................................11

*Am. Elec. Power Co. v. Connecticut*,
　564 U.S. 410 (2011) ..................................................................................................................15

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...................................................................................................... 15, 17-18

*Ayers v. Jackson Twp.*,
　525 A.2d 287 (N.J. 1987) ..................................................................................................... 19-20

*Baldonado v. Avrinmeritor, Inc.*,
　2014 WL 2116112 (D. Del. May 20, 2014) ...............................................................................18

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ...........................................................................................................4, 13, 15

*Brzoska v. Olson*,
　668 A.2d 1355 (Del. 1995) .................................................................................................. 1, 9-11

*Cropper v. Rego Distribution Ctr., Inc.*,
　542 F. Supp. 1142 (D. Del. 1982) .............................................................................................13

*Dayton v. Collison*,
　2019 WL 4668157 (Del. Super. Ct. Sept. 24, 2019) ........................................................... 14-15

*Hartig Drug Co. v. Senju Pharm. Co.*,
　836 F.3d 261 (3d Cir. 2016) ........................................................................................................4

*Hudson v. Old Guard Ins. Co.*,
　3 A.3d 246 (Del. 2010) ...............................................................................................................17

*In re Asbestos Litig.*,
　1994 WL 16805917 (Del. Super. Ct. Aug. 5, 1994) ...................................................................9

*M.G. ex rel. K.G. v. A.I. Dupont Hosp. for Children*,
　393 F. App'x 884 (3d Cir. 2010) ........................................................................................ 2, 10-12

*Martinez v. E.I. DuPont De Nemours & Co.,*
 82 A.3d 1, 33 (Del. Super. Ct. 2012), *aff'd*, 86 A.3d 1102 (Del. 2014) ...................................5

*Mauro v. Raymark Indus., Inc.,*
 561 A.2d 257 (N.J. 1989)........................................................................................19

*Mergenthaler v. Asbestos Corp. of Am.,*
 480 A.2d 647 (Del. 1984) ..................................................................................... 1, 9-11

*Metro-N. Commuter R. Co. v. Buckley,*
 521 U.S. 424 (1997)........................................................................................ 7, 18-19

*Millison v. E.I. du Pont de Nemours & Co.,*
 545 A.2d 213 (N.J. Super. Ct. App. Div. 1988),
 *aff'd*, 558 A.2d 461 (N.J. 1989) ..............................................................................19

*Moore v. Sharp Gas Inc.,*
 1992 WL 147930 (D. Del. June 11, 1992)...................................................................13

*Nieves v. Off. of the Pub. Def.,*
 230 A.3d 227 (2020) ...........................................................................................20

*Patton v. Simone,*
 1993 WL 144361 (Del. Super. Ct. Mar. 9, 1993) ..........................................................14

*Rainer v. Union Carbide Corp.,*
 402 F.3d 608 (6th Cir. 2005) ....................................................................................7

*Reilly v. Ceridian Corp.,*
 664 F.3d 38 (3d Cir. 2011)......................................................................................15

*Sinclair v. Merck & Co.,*
 948 A.2d 587 (N.J. 2008).......................................................................................19

*State ex rel. Jennings v. Purdue Pharma L.P.,*
 2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019)..........................................................14

*Theer v. Philip Carey Co.,*
 628 A.2d 724 (1993) ...........................................................................................20

*Thomas-Fish v. Avborne Accessory Grp., Inc.,*
 2019 WL 3281273 (D. Del. July 19, 2019) ..................................................................17

*Tumlinson v. Advanced Micro Devices, Inc.,*
 2010 WL 8250792 (Del. Super. Ct. July 23, 2010) ......................................................4-5

*United States v. Anderson,*
 669 A.2d 73 (Del. 1995) .........................................................................................9

*Willon v. Werb*,
    2019 WL 6705003 (Del. Super. Ct. Dec. 9, 2019) ...................................................17

**Rules and Statutes**

7 *Del. C.* § 6003(a)(1) ........................................................................................................16

Federal Employers' Liability Act ........................................................................ 18-19

Federal Rule of Civil Procedure Rule 12(b)(6) ...................................................... *passim*

## I.     INTRODUCTION

The Court should dismiss this suit under Rule 12(b)(6) because Plaintiff fails to state a claim. Plaintiff alleges that she and members of the putative class are facing an increased risk of developing a serious disease in the future as a result of decades of alleged potential exposure to trace amounts of ethylene oxide emitted from Croda's facility.  Neither Plaintiff nor any member of the class has actually been diagnosed with an illness related to the claimed exposure—the only injury alleged in the Complaint is an "increased risk" of developing a disease in the future.  In fact, any person with any actual illness associated with exposure is specifically excluded from the class. Every claim asserted in this action fails because the alleged increased risk of developing a disease in the future is not cognizable as pled in Delaware.  Although Delaware law governs here, Plaintiff's claims also fail under New Jersey law, which does not allow medical monitoring based on the allegations pled here.  Therefore, all of Plaintiff's claims must be dismissed under Rule 12(b)(6).

## II.     SUMMARY OF ARGUMENT

1.     The Court should dismiss the claims under Rule 12(b)(6) because each one fails to state a claim upon which relief can be granted.

2.     Delaware law controls here because Delaware has the most significant relationship to the parties, claims, and injuries alleged in this litigation.

3.     All of Plaintiff's claims fail under Delaware law because they do not state a compensable injury.  Each claim states that Plaintiff and class members have an increased risk of developing an illness in the future.  However, in Delaware, increased risk without any underlying physical injury is not a cognizable harm.  *See Brzoska v. Olson*, 668 A.2d 1355, 1362 (Del. 1995); *see also Nutt v. A.C.&S., Inc.*, 466 A.2d 18, 26 (Del. Super. Ct. 1983), *aff'd sub nom. Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984).  Since neither Plaintiff nor any class member

has alleged a present physical injury or current diagnosis, they have failed to allege a cognizable harm.  As a result, each claim must be dismissed under Rule 12(b)(6).

4.      Plaintiff's medical monitoring claim fails for the independent reason that Delaware does not recognize medical monitoring as an independent cause of action.  *See M.G. ex rel. K.G. v. A.I. Dupont Hosp. for Children*, 393 F. App'x 884, 892 n.6 (3d Cir. 2010) (applying Delaware law).

5.      Plaintiff's other claims fail for the independent reason that Plaintiff has not included sufficient detail to support a cause of action.  Plaintiff has merely recited the bare elements of her claims, without sufficient supporting detail to plead her claims.

6.      Finally, Plaintiff's public and private nuisance claims fail because Plaintiff lacks standing to bring these claims.

7.      In the alternative, if the Court finds that New Jersey law applies, Plaintiff's claims fail under that standard as well.  New Jersey law requires that plaintiffs seeking recovery for medical monitoring must demonstrate that it is "more likely than not" that they will develop a disease as a result of their exposure, which plaintiffs cannot do.

8.       For these reasons, the Court should dismiss all claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

III.    FACTUAL BACKGROUND

Croda Inc. has produced various specialty chemicals at the Atlas Point complex in New Castle, Delaware since 2006.  Prior to Croda's ownership, the Atlas Point facility was operated by Uniqema.  (Compl. (D.I. 1) ¶¶ 33-34).  Plaintiff and the members of the putative class seek to recover for alleged exposure to ethylene oxide emitted from the Atlas Point facility from 1988 to the present.  (*Id.* ¶¶ 63-64).  Over the course of more than three decades, the Atlas Point facility

operated within legal and regulatory limits, emitting trace levels of ethylene oxide that were within state and federal emissions limits. From 1988 to 2015, the Complaint alleges only minor, technical violations of state regulations, including "failure to record emissions," failure to maintain "best management practices," and "failure to make timely permit applications." (Compl. ¶¶ 33-35). The Complaint also notes that a "documented unpermitted release" of ethylene oxide occurred in 2008. (*Id.* ¶ 34). Croda—and Uniquema—used a legal chemical in their operations for decades and complied with extensive state and federal regulations over this period.

In 2015, Croda—with all the required state and county approvals—started construction on a new bio-ethylene oxide plant that would be the first facility in the United States to produce ethylene oxide using biofuels. Croda uses the ethylene oxide it produces onsite to make other products at the Atlas Point facility. Croda completed construction of its bio-ethylene oxide plant in late 2018. Shortly after the plant opened, a gasket installed by a subcontractor that did not meet the engineering specifications failed, resulting in an ethylene oxide leak. Croda and first responders sprayed thousands of gallons of deluge water into the air to quickly dissolve the leaked ethylene oxide. (Compl. ¶ 37).

Catherine Baker (a Delaware resident) filed suit against Croda (a Delaware corporation) in the District of Delaware, alleging that the ethylene oxide emitted from Croda's New Castle facility caused her and members of the putative class to be at an increased risk of developing cancer or another illness in the future. (Compl. ¶¶ 62-63). In her Complaint, Plaintiff alleges that the emission of ethylene oxide from the Atlas Point facility has exposed her and Class Members to a hazardous chemical which increases their risk of developing certain diseases. (Compl. ¶¶ 1-6). Plaintiff has asserted claims for ultrahazardous activity/strict liability, public nuisance, private nuisance, negligence, willful and wanton conduct, and medical monitoring. (Compl. ¶¶ 73-123).

The Class Members include only persons who have not been diagnosed with cancer or an illness, disease, or disease process of the kind caused by ethylene oxide. (Compl. ¶ 63). However, Plaintiff asserts that both she and Class Members "are at an increased risk of illness and disease," and seek the cost of a medical monitoring program to detect for early signs or symptoms of disease as a remedy for each asserted claim. (Compl. ¶¶ 68).

## IV.   LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding a Rule 12(b)(6) motion, a court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complaint's claims are based upon these documents." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 273 (3d Cir. 2016) (internal citations and quotations omitted). "The purpose of a motion to dismiss is to test the sufficiency of a complaint." *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006). "When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff." *Id.* The Court should dismiss where it appears "that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Id.*

## V.   ARGUMENT

### A.   Delaware Law Governs Plaintiff's Claims

Delaware law governs the claims at issue in this suit. Delaware courts apply the "most significant relationship" test to determine which state's laws govern in a tort case. *Tumlinson v. Advanced Micro Devices, Inc.*, 2010 WL 8250792, at *1 (Del. Super. Ct. July 23, 2010) *citing Clinton v. Enterprise Rent–A–Car Co.*, 977 A.2d 892, 895 (Del. 2009). The contacts that are taken into account include: "(a) the place where the injury occurred, (b) the place where the conduct

causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Tumlinson*, 2010 WL 8250792 at *2. "For personal injury actions, the law of the state where the injury occurred is presumed to control." *Id.*

Here, the alleged injury occurred in Delaware, when individuals who lived near Croda's New Castle facility were allegedly exposed to gas emitted from the Atlas Point plant. The conduct "causing the injury" similarly occurred in New Castle, Delaware. (*See* Compl. ¶¶ 43-45). The plaintiffs in this case are all current or former Delaware residents. (*Id.* ¶ 62). Croda is a Delaware corporation and operates the Atlas Point facility in New Castle. (*Id.* ¶ 9). Finally, to the extent that Croda and class members have any relationship, it is centered in Delaware, where the Atlas Point facility is located and where each purported member of the class experienced that alleged exposure. (*Id.*) Every factor indicates that Delaware law should apply in this case.

In similar cases, Delaware courts have found that the location of the alleged toxic tort is dispositive. For example, in *Tumlinson*, the Delaware court found that a Texas citizen's suit against a manufacturing company for exposure to toxic chemicals at the company's Texas facility should be governed by Texas law, even though the defendant was incorporated in Delaware. 2010 WL 8250792, at *3. Similarly, in *Martinez v. E.I. DuPont De Nemours & Co.*, the court found that the laws of Argentina governed a claim brought by the widow of a worker who died as a result of asbestos exposure at a textile plant in Argentina, even though the parent company was incorporated in Delaware. 82 A.3d 1, 33 (Del. Super. Ct. 2012), *aff'd*, 86 A.3d 1102 (Del. 2014).

Plaintiff's only argument to the contrary rests on the assumption that since Croda's headquarters are located in New Jersey, the "conduct causing the injury" must have occurred in New Jersey. (*See*, *e.g.*, D.I. 14 at 10). This baseless assumption is not sufficient to justify applying

the law of New Jersey to a case involving Delaware residents suing a Delaware corporation for the operations of a Delaware manufacturing facility.  The alleged harm involves the manufacture of ethylene oxide, which occurs only in Delaware, not New Jersey.  (Compl. ¶ 27).  The Complaint identifies a series of events that occurred in Delaware—not New Jersey.  (*Id.* ¶¶ 16, 27, 34-37).  Delaware has the most significant relationship to this case.  Therefore, Delaware law governs.

> **B.**     **Under Delaware Law, All Claims Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim**

All of Plaintiff's claims should be dismissed under Rule 12(b)(6) because the complaint fails to allege a single claim upon which relief can be granted.  Plaintiff's Complaint fails to plead any viable claim because it does not allege that Plaintiff or any Class Member has been diagnosed with cancer or any other illness as a result of living near the Atlas Point facility.  In fact, the putative class specifically excludes "all persons who have been currently been diagnosed with cancer or illness, disease or disease process of the kind caused by EtO[.]"  (Compl. ¶ 63).  Injury is a threshold requirement for each claim, and Plaintiff's only alleged injury is that "Plaintiff and Class Members suffer a present increased risk of illness, disease and disease processes."  (Compl. ¶ 6).  Fear of developing a disease in the future—without any present, underlying physical injury— is not a compensable injury under Delaware law.  Plaintiff also asserts a claim for medical monitoring (Compl. ¶¶ 118-123), which is not recognized as an independent cause of action under Delaware law.  All of Plaintiff's other claims seek an award of the cost of a medical monitoring program as a remedy for various common law torts (Compl. ¶¶ 73-117), which also fail as a matter of law because a plaintiff cannot recover for the costs of medical monitoring without proof of a physical injury under Delaware law.  Notably, <u>no member of the class,</u> by definition, has been diagnosed with cancer or any other illness related to ethylene oxide exposure.  (Compl. ¶¶ 62-63).

As set forth below, Delaware courts do not recognize medical monitoring as either (1) an independent cause of action or (2) a remedy for individuals who have been exposed to hazardous chemicals but have not diagnosed with a related disease.  Even in the few of cases outside of Delaware where damages for medical monitoring have been awarded, those courts "have suggested, or imposed, special limitations on that remedy." *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 441 (1997).  Allowing class claims for alleged exposure to legal emissions of regulated chemicals could overwhelm the courts with claims for minimal, speculative future harm. "Based upon the average American's exposure to chemically processed foods, toxic fumes, genetically modified fruits and vegetables, mercury-laden fish, and hormonally treated chicken and beef, this might encompass a very large percentage of the total population." *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 621 (6th Cir. 2005).  The potential tort claims for alleged exposure to minor amounts of legally discharged chemicals "can be perceived to lie around every corner in the modern industrialized world, and their effects on risk levels are at best speculative, the potential tort claims involved are inherently limitless and endless." *Id.*  As a result, placing legal limitations on claims for medical monitoring based upon alleged exposure to potentially hazardous (yet permitted) substances is necessary even in jurisdictions where such a claim may exist.

"[T]ens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring." *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 442 (1997).  "[T]hat fact, along with uncertainty as to the amount of liability, could threaten both a 'flood' of less important cases (potentially absorbing resources better left available to those more seriously harmed[,]) and the systemic harms that can accompany "unlimited and unpredictable liability" (for example, vast testing liability adversely affecting the allocation of scarce medical resources).  *Id.*  Delaware courts have addressed these concerns by

only awarding medical monitoring damages as a remedy where the plaintiff has already suffered an independent, significant harm such as being diagnosed with cancer, or suffering a serious injury as a result of medical malpractice.

As explained in more detail below, each of Plaintiff's claims fail under Delaware law.  Any class member who develops cancer or another illness allegedly related to ethylene oxide exposure may bring claims for their injury.  However, allowing claims *en masse* to a class of healthy persons who do not claim any injury beyond background exposure to legally-emitted ethylene oxide is not permitted under Delaware law.

1.    All Claims Should Be Dismissed Under Rule 12(b)(6)
Because Plaintiff Has Not Alleged a Compensable Injury

Plaintiff has not adequately pled claims for strict liability, public nuisance, private nuisance, negligence, willful and wanton conduct, or medical monitoring because she has not alleged any compensable injury.  Plaintiff alleges that as a result of Defendant's negligence, "Plaintiff and the Class Members presently suffer, and will continue to suffer, a present increased risk of illness, disease or disease process, and the resulting present need to incur the cost of reasonably medically necessary diagnostic testing for the early detection of illness."  (Compl. ¶ 80 (Claim 1)).  Plaintiff makes nearly-identical allegations of harm for all other claims.  (*See* Compl. ¶¶ 89, 109, 109, and 177 (identical language for Claims 2 through 5) and Compl. ¶ 121 ("Plaintiff and Class Members have a significantly increased risk of contracting several different types of cancer") (Claim 6)).  In short, the only harm alleged in the Complaint is the "present increased risk of disease."  In Delaware, the increased risk of developing a disease as a result of exposure to a toxin, without more, is not a compensable injury.

The lack of a compensable injury is fatal to Plaintiff's claims.  To prevail on any tort claim, a plaintiff must demonstrate "that the plaintiff has in fact suffered harm of a kind legally

compensable by damages." *In re Asbestos Litig.*, 1994 WL 16805917, at *1 (Del. Super. Ct. Aug. 5, 1994); *see also Brzoska v. Olson*, 668 A.2d 1355, 1362 (Del. 1995) (where plaintiffs "sustained no physical injury . . . they could not recover under a negligence theory.").  Fear of developing a disease in the future "without a demonstrable physical change in bodily condition . . . is not compensable." *Nutt v. A.C.&S., Inc.*, 466 A.2d 18, 26 (Del. Super. Ct. 1983), *aff'd sub nom. Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984).  Similarly, under Delaware law, where "plaintiffs do not have a compensable physical injury, plaintiffs may not recover for the expenses of medical surveillance." *In re Asbestos Litig.*, 1994 WL 16805917, at *2 (denying a request for medical surveillance damages in a negligence case).  The Delaware Supreme Court has held that the requirement of a *present* physical injury is an approach adopted to prevent recovery on "speculative claims for future harm." *United States v. Anderson*, 669 A.2d 73, 77 (Del. 1995).  "The requirement of a preceding physical injury prohibits plaintiffs from claiming that exposure to toxic substances, for instance, has created an increased risk of harm not yet manifested in a physical disease." *Id.*  Thus, Delaware courts have determined—as a matter of public policy—that a present physical injury is a mandatory prerequisite to recovering damages for increased risk of developing a disease in the future.

Plaintiff cannot recover medical surveillance damages by simply alleging that she may have been exposed to a toxin.  To recover any damages, she must allege "present physical injury." Plaintiff has not stated a claim upon which relief can be granted because she has not alleged a physical injury resulting from her exposure to ethylene oxide.  The Delaware Supreme Court squarely addressed this issue when it affirmed the dismissal of a putative class action seeking medical monitoring for alleged asbestos exposure. *Mergenthaler v. Asbestos Corp. of Am.,* 480 A.2d 647, 649 (Del. 1984).  In *Mergenthaler*, the Delaware Supreme Court held that "a claim for

the expenses of medically required surveillance and related mental anguish . . . fails to state a claim upon which relief can be granted **_where there is no present physical injury_**." *Id.* Where plaintiffs "concede that they have suffered no physical injury due to wrongful [toxin] exposure . . . that concession is dispositive." *Id.* at 651.

Delaware courts have continued to apply the *Mergenthaler* holding that physical injury is required to recover medical surveillance damages. In *Brzoska v. Olsen*, a class of plaintiffs sued after learning that they had been treated by a dentist who was infected with HIV. 1994 WL 233866, at *1 (Del. Super. Ct. May 2, 1994), *aff'd in part, rev'd in part sub nom. Brzoska v. Olson*, 668 A.2d 1355 (Del. 1995). Although no plaintiff had tested positive for HIV, plaintiffs sued to recover for the costs of medical monitoring under several theories of liability, including negligence. *Id.* at *2. The court ruled that plaintiffs could not "maintain their cause of action for mental distress resulting from fear of disease," and dismissed their negligence claim. *Id.* at *1.

Plaintiff's class definition specifically excludes anyone that has cancer or another illness as a result of exposure to ethylene oxide. Plaintiff alleges only that class members are at an increased risk of developing cancer in the future. (Compl. ¶¶ 54, 57). For this reason, every claim brought by Plaintiff and the putative class must be dismissed. "[D]amages for claims of . . . fear of contracting a disease [ ] are recoverable only if the underlying physical injury is shown," *Brzoska*, 668 A.2d at 1362, *citing Mergenthaler*, 480 A.2d at 651. Plaintiffs have failed to plead (and have specifically disclaimed by its pleading) any cognizable injury for any of their claims.

2.    Plaintiff Has Not Stated a Medical Monitoring Claim

As described above, Plaintiff's medical monitoring claim fails because Plaintiff has not pled a cognizable injury. Plaintiff's medical monitoring claim should also be dismissed for the independent reason that "[t]he Delaware Supreme Court has not recognized a cause of action for medical monitoring." *M.G. ex rel. K.G. v. A.I. Dupont Hosp. for Children*, 393 F. App'x 884, 892

n.6 (3d Cir. 2010) (applying Delaware law).  However, even if the Delaware Supreme Court were to recognize a claim for independent medical monitoring, Plaintiff's claim, as pled, would still fail.

Medical monitoring is not an independent cause of action in Delaware.  In the few cases where medical monitoring costs were awarded, they were as part of a *remedy* for an independent tort (most often medical malpractice which resulted in a significant physical injury).  Delaware courts have never "explicitly recognized medical monitoring as a legally cognizable cause of action." *M.G. ex rel. K.G.*, 393 F. App'x at 891.  A Court sitting in diversity must "predict how the state's supreme court would resolve the issue" by evaluating the decisions of that state's intermediate courts.  *Id.*  Neither the Delaware Supreme Court nor any lower court has ever recognized medical monitoring as an independent tort.  *See Brzoska,* 668 A.2d at 1359 (dismissing a negligence claim that sought medical surveillance as a remedy); *see also Mergenthaler,* 480 A.2d at 651 (denying recovery of medical monitoring expenses where plaintiffs had failed to demonstrate a physical injury); *Alderman v. Clean Earth*, 2007 WL 1334565, at *1 (Del. Super. Ct. Apr. 30, 2007), *aff'd sub nom. Alderman v. Clean Earth, Inc.*, 954 A.2d 909 (Del. 2008) (striking a medical monitoring damages theory where residents claimed they were exposed to contaminated water and sought medical monitoring expenses as damages for their negligence and strict liability claims).

The Third Circuit recently considered whether "the Delaware Supreme Court [would] recognize a medical monitoring cause of action," and "declin[ed] to predict whether the Delaware Supreme Court might acknowledge some variant of a medical monitoring claim." *M.G. ex rel. K.G.*, 393 F. App'x at 892–93.  In that case, the Third Circuit reversed the District Court's ruling that Plaintiff had a claim for medical monitoring.  In the underlying case, the plaintiff had undergone surgery to implant a "proven and admittedly hazardous" heart stent which "significantly

increased [her] risk of [ ] side effects." 393 F. App'x 884, 891 (3d Cir. 2010). Plaintiff submitted a variety of claims, including an independent claim for medical monitoring. *Id.* Although a Pennsylvania District Court predicted that the Delaware Supreme Court would permit a claim for medical monitoring, the Third Circuit reversed. *Id.* In its opinion, the Third Circuit stated that "[n]either the District Court nor Plaintiff points to any case in this Circuit, let alone in Delaware, in which a free-standing medical monitoring claim has been allowed to proceed although the plaintiff has not demonstrated significant exposure to a toxic (poisonous) or proven hazardous substance." *Id.* at 892. The Court concluded that "the District Court's prediction that the Delaware Supreme Court would permit a claim for medical monitoring on this record requires several 'leaps' from the current state of the law, generally, let alone Delaware law." *Id.* The Third Circuit in the *DuPont Hospital* case ultimately declined to consider whether the Delaware Supreme Court would recognize a medical monitoring claim, finding instead that since the Plaintiff was unable to establish the necessary elements to make out a claim, there was no need to reach the issue of medical monitoring damages. *Id.* at 893.

While Delaware cases recognize medical monitoring as a potential remedy for an independent tort (in inapplicable circumstances where plaintiff has also alleged present physical injury), it has not been recognized as a cognizable standalone claim in Delaware. It also would not make sense to recognize medical monitoring as an independent claim without actual injury when the underlying claims fail under Delaware law for the same lack of actual injury.

### 3.      Plaintiff Has Not Stated a Claim for Ultrahazardous Activity

Plaintiff's claim for strict liability/ultrahazardous activity should be dismissed because Plaintiff has failed to state a claim.[1]  "Delaware courts have been hesitant to extend [the] application" of strict liability.  *Cropper*, 542 F. Supp. at 1149.  It is not sufficient to allege that a defendant carried out an activity with risks or "failed to exercise the degree of care commensurate with the danger[] or the activity."  *Id.*  Delaware courts have applied the strict liability theory narrowly—e.g., to "an activity being conducted in an inappropriate location" or an activity "totally lacking in social utility."  *Id.* (collecting cases).  Delaware courts consider the following factors in determining whether an activity is ultrahazardous:

      (a)     existence of a high degree of risk of some harm to the person, land or chattel of others;

      (b)     likelihood that the harm that results from it will be great;

      (c)     inability to eliminate the risk by the exercise of reasonable care;

      (d)     extent to which the activity is not a matter of common usage;

      (e)     inappropriateness of the activity to the place where it is carried on; and

      (f)     extent to which its value to the community is outweighed by its dangerous attributes.

*Moore v. Sharp Gas Inc.*, 1992 WL 147930, at *2 (D. Del. June 11, 1992) (holding that the transmission of natural gas via pipe is not an ultrahazardous activity).  Plaintiff's strict liability claim includes only "formulaic recitation[s] of the elements of a cause of action" which are insufficient to state a claim under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.  Plaintiff asserts that

---

[1]      As discussed in Section V.B.1, Plaintiff's ultrahazardous activity claim also fails because Plaintiff has not alleged a cognizable harm.  A plaintiff seeking compensation under an abnormally dangerous activity theory must demonstrate harm.  *Cropper v. Rego Distribution Ctr., Inc.*, 542 F. Supp. 1142, 1149 (D. Del. 1982).  Fear of developing a disease in the future, without any current physical injury, is not a cognizable harm in Delaware.

Croda's ethylene oxide facility is "exceedingly dangerous" and "offer[s] little or no value to the surrounding community."  (Compl. ¶ 78).  However, Plaintiff has not pled that the manufacturing and use of ethylene oxide "is not a matter of common usage" or that "its value to the community is outweighed by its dangerous attributes."  Plaintiff has not included facts supporting her bare claim that the risk of ethylene oxide emissions "cannot be eliminated" or that processing ethylene oxide "cannot be made safe by the exercise of the utmost care."  (Compl. ¶¶ 75-76).  These are the sort of formulaic allegations which do not meet the pleading standard of Rule 12(b)(6).  Plaintiff's ultrahazardous activity claim should be dismissed.

### 4.   Plaintiff Has Not Stated a Claim for Public Nuisance and Lacks Standing to Bring the Claim.

Plaintiff has not stated a claim for public nuisance and lacks standing to assert it.  In Delaware, "a public nuisance is [an] activity which produces some tangible injury to neighboring property or persons coming into contact with it and which a court considers to be objectionable under the circumstances." *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *11 (Del. Super. Ct. Feb. 4, 2019).  "To have standing to sue on a public nuisance claim, an individual must (1) be capable of recovering damages and (2) have standing to sue as a representative of the public." *Dayton v. Collison*, 2019 WL 4668157, at *3 (Del. Super. Ct. Sept. 24, 2019).  A private plaintiff only has standing to bring a public nuisance claim where he or she "suffered injury of a kind different from that suffered by other members of the public." *Patton v. Simone*, 1993 WL 144361, at *1 (Del. Super. Ct. Mar. 9, 1993).  Here, Plaintiff has not alleged that she has "standing to sue as a representative of the public," or that she has "suffered a harm of a kind different from that suffered by other members of the public."  Rather, Plaintiff alleges that she—and thousands of others who have lived in census tracts 10003015400, 10003105502, and 10003015802 over several decades—were exposed to ethylene oxide sometime between 1988 and the present.

(Compl. ¶ 50-51 ("Plaintiff and Class Members have lived within the vicinity of the Atlas Point plant . . . [and] have inhaled toxic EtO")).  Having failed to plead a special or different kind of injury from other residents, Plaintiff lacks standing to bring a public nuisance claim.

Plaintiff has also failed to plead a viable public nuisance claim under Delaware law.[2] Plaintiff has not alleged a "tangible injury" as required by Delaware law, asserting only an unspecified, future risk of developing a disease.  *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (an indefinite risk of future harm is not a cognizable injury injury).  Plaintiff has also failed to meet the pleading standards for a public nuisance claim with her bare recitation of the elements of the claim.  Where, as here, a plaintiff relies on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," she has failed to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly,* 550 U.S. at 555.

5.      Plaintiff Has Not Stated a Claim for Private Nuisance

The Complaint does not state a claim for private nuisance.  Delaware recognizes claims for "a nontrespassory invasion of another's interest in the private use and enjoyment of their land." *Dayton v. Collison*, 2019 WL 4668157, at *5 (Del. Super. Ct. Sept. 24, 2019).  The Complaint alleges that the Atlas Point facility "constitutes an absolute nuisance or nuisance per se."  (Compl. ¶ 95).  A claim for nuisance *per se* exists where there has been "1) intentional, unreasonable interference with property rights of another; 2) interference resulting from an abnormally hazardous activity conducted on the person's property; and 3) interference in violation of a statute intended to protect public safety."  *Dayton*, 2019 WL 4668157 at *5.

---

[2]  To the extent that Plaintiff asserts a public nuisance claim under federal common law, that claim is preempted by the Clean Air Act.  *See Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 429 (2011).

Plaintiff has not made out a claim for "intentional, unreasonable . . . interference in violation of a statute intended to protect public safety." The Complaint itself describes the ethylene oxide leak as an "accident," and not an intentional act. (Compl. ¶ 8). Further, all of the statutes that Plaintiff identifies to support its negligence *per se* claim were allegedly violated during the November 25, 2018 accident described in the Complaint. (Compl. ¶¶ 37-39, describing the use of deluge water to disperse leaked ethylene oxide and a subsequent settlement agreement relating to 7 *Del. C.* § 6003(a)(1)). However, Plaintiff asserts that as a result of operating the Atlas Point facility, "EtO ***continuously*** invaded and contaminated the areas surrounding Plaintiff's and Class Members' residences." (Compl. ¶ 101). The statutory violations Plaintiff lists in paragraphs 96, 97, and 98 of the Complaint—including the unpermitted use of deluge water to disperse ethylene oxide in the air—all relate to the November 25, 2018 accident.[3] (Compl. ¶¶ 37-39, describing the use of deluge water to disperse leaked ethylene oxide and a subsequent settlement agreement relating to 7 *Del. C.* § 6003(a)(1)). By definition, a single incident is not a "continuous" invasion of Plaintiff's property.

The Complaint also fails to provide any support for its bare allegation that the operation of the Atlas Point facility was unreasonable. As explained in Section IV.B.3, *supra*, the Complaint has not established the operation of the Atlas Point facility is an "abnormally hazardous activity," and failed to weigh any purportedly dangerous attributes of the facility against its value to the community. The nuisance per se claim has not been properly stated and should be dismissed.

---

[3] To the extent that Plaintiff states a nuisance *per se* claim at all, it applies only to persons who lived near the Atlas Point facility on November 25, 2018.

6.      Plaintiff Has Not Stated a Claim for Negligence

Plaintiff has not pled a claim for negligence.  Under Delaware law, a claim for negligence must plead (1) duty, (2) breach, (3) causation, and (4) damages.  *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010).  As discussed in Section IV.B.1, Plaintiff has failed to allege a cognizable harm.  In addition, Plaintiff has also failed to meet the pleading standard under *Iqbal* for the elements of duty, breach, and proximate causation.  A "formulaic recitation of the elements of a cause of action" is not sufficient to make out a claim.  *Iqbal*, 556 U.S. at 678.

Here, Plaintiff asserts generally that Croda "owed Plaintiff and Class Members a duty to operate its Atlas Point plant in a manner which would not cause Plaintiff and Class Members injury or harm," then asserts that this duty was breached by emitting ethylene oxide into the air and failing "to take steps to minimize or eliminate the release of EtO."  (Compl. ¶¶ 104-05).  This cursory recitation of the duty and breach elements for negligence is not sufficient to state a claim, and Plaintiff's negligence claim should be dismissed.

7.      Plaintiff Has Not Stated a Claim for Willful or Wanton Conduct

Plaintiff has not made out a claim for willful or wanton conduct.  In Delaware, "[t]here is a clear distinction between wantonness and negligence, as the former term includes the elements of consciousness of one's conduct, realization of the probability of injury to another, and disregard of the consequences."  *Willon v. Werb*, 2019 WL 6705003, at *2 (Del. Super. Ct. Dec. 9, 2019).  "In other words, a willful or wanton disregard of a plaintiff's rights—as opposed to negligence— reflects a 'conscious indifference' or an 'I-don't-care attitude.'"  *Id.*  Allegations that a defendant acted willfully or with malice must be pled with "factual averments descriptive of conduct" and not merely recitations of the elements of a claim.  *Thomas-Fish v. Avborne Accessory Grp., Inc.*, 2019 WL 3281273, at *4 (D. Del. July 19, 2019).

Here, Plaintiff has not alleged that Croda acted "with malice" and has not listed any facts demonstrating willful or wanton conduct. Rather, Plaintiff states only that Croda "owed a duty to refrain from willful and wanton conduct," and that Plaintiff and the class "suffer, and will continue to suffer, a present increased risk of illness" as a "direct and proximate result of Defendant's willful, wanton, reckless and outrageous conduct." (Compl. ¶¶ 111, 117). "[T]his was 'precisely the type of vague, 'defendant-unlawfully-harmed me accusation' that the Supreme Court [ ] condemned' in *Iqbal*." *Baldonado v. Avrinmeritor, Inc.*, 2014 WL 2116112, at *5 (D. Del. May 20, 2014). Plaintiff's claim for willful and wanton conduct is insufficient and should therefore be dismissed.

     C.     Under New Jersey Law, All Claims Should Be Dismissed Under Rule 12(b)(6) For Failure to State a Claim

New Jersey law has recognized medical monitoring, but only in narrow, confined circumstances. The facts of this case as pled do not meet the narrowly-defined circumstance where a claim for monitoring of increased future risk could be actionable. As explained in *Metro-N. Commuter R. Co. v. Buckley* "the cases authorizing recovery for medical monitoring in the absence of physical injury do not endorse a full-blown, traditional tort law cause of action for lump-sum damages . . . [r]ather, those courts, while recognizing that medical monitoring costs can amount to a harm that justifies a tort remedy, have suggested, or imposed, special limitations on that remedy." 521 U.S. 424, 440–41 (1997) (applying federal law under the Federal Employers' Liability Act). These limitations are justified in light of the millions of potential claims which "could threaten

both a 'flood' of less important cases . . . and the systemic harms that can accompany 'unlimited and unpredictable liability.'"  *Id.*[4]

Under New Jersey law, "recovery for enhanced risk of contracting a disease due to exposure to toxic chemicals is only possible upon proof that it is ***more probable than not*** (the rule of reasonable medical probability) that the plaintiff will develop the disease."  *Sinclair v. Merck & Co.*, 948 A.2d 587, 592 (N.J. 2008) (emphasis added); *see also Mauro v. Raymark Indus., Inc.*, 561 A.2d 257, 260 (N.J. 1989) ("[U]nless plaintiff [can] prove to a reasonable degree of medical certainty that cancer was more probable than not, his claim for increased risk of cancer could not be sustained.").  This requirement imposes a necessary limitation on pleading claims for increased risk of harm from exposure to a substance.

As the New Jersey Appellate Court recently explained, "[i]n *Ayers*, the [New Jersey Supreme] court refused to recognize a cause of action for the unquantified enhanced risk of a disease which had not occurred, and which might never occur.  In so holding, the court distinguished the problem of quantifying an injury for an intentional tort representing an injury that had occurred and could be proven at trial."  *Millison v. E.I. du Pont de Nemours & Co.*, 545 A.2d 213, 222 (N.J. Super. Ct. App. Div. 1988), *aff'd*, 558 A.2d 461 (N.J. 1989) (citing *Ayers v. Jackson Twp.*, 525 A.2d 287, 309 (N.J. 1987)).

*Ayers v. Township of Jackson* is one of the few examples in New Jersey where a court allowed medical monitoring claims to go forward after a group of individuals sued for exposure to toxic chemicals released from a government-owned facility.  New Jersey courts have noted that the 1987 *Ayers* ruling involved "a unique damage claim [which] must be understood in its narrow

---

[4]  The Supreme Court in *Metro-North Commuter Rail Co.* declined to award medical monitoring or emotional distress damages to a railroad worker who had been exposed to asbestos at work but who had not yet developed any disease.  *Id.* at 444.

context." *Nieves v. Off. of the Pub. Def.*, 230 A.3d 227, 236 (2020). In subsequent New Jersey Supreme Court decisions interpreting *Ayers,* the court noted that the remedy in *Ayers* "is not easily invoked" and "was fashioned to help a class or persons who had been victimized by a public entity." *Theer v. Philip Carey Co.*, 628 A.2d 724, 732-33 (1993) (noting that it "becomes increasingly difficult for courts and juries to determine the direct correlation between the indirect exposure and any future risk of injury" for a plaintiff who "has not suffered from any injury or condition relating to [ ] exposure"). The *Ayers* decision "has not been expanded upon since," and the New Jersey Supreme Court "decline[d] the invitation to" expand its holding to other factual contexts in a 2020 decision. *Nieves*, 230 A.3d at 236. Here, Plaintiff has not alleged (and cannot reasonably allege for this class) that it is "more probable than not" that she and class members will develop a disease as a result of exposure to ethylene oxide. Therefore, Plaintiffs' claims must be dismissed under New Jersey law.

## VI.   CONCLUSION

For these reasons, Croda respectfully requests that the Court enter an order to dismiss this case for failure to state a claim under Rule 12(b)(6).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (# 2067)
Miranda N. Gilbert (# 6662)
1201 N. Market Street
Wilmington, DE  19801
(302) 658-9200
knachbar@morrisnichols.com
mgilbert@morrisnichols.com
   *Attorneys for Defendant*

OF COUNSEL:

Stephen A. Swedlow
Athena D. Dalton
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL  60606
(312) 705-7400
stephenswedlow@quinnemanuel.com
athenadalton@quinnemanuel.com

August 27, 2021