IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CATHERINE BAKER, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-cv-01108-SB |
| v. | ) ) ) | |
| CRODA INC. f/k/a CRODA, INC., | ) ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF
CRODA INC.'S RENEWED MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Kenneth J. Nachbar (# 2067)
Miranda N. Gilbert (# 6662)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
knachbar@morrisnichols.com
mgilbert@morrisnichols.com
  *Attorneys for Defendant*

OF COUNSEL:

Stephen A. Swedlow
Athena D. Dalton
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400
stephenswedlow@quinnemanuel.com
athenadalton@quinnemanuel.com

October 22, 2021

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

I.    DISCOVERY IS NOT NECESSARY TO DETERMINE THAT DELAWARE LAW GOVERNS PLAINTIFF'S CLAIMS. ........................................................................ 1

II.    PLAINTIFF'S CLAIMS FAIL UNDER DELAWARE LAW ............................................ 4

III.    PLAINTIFF'S CLAIMS FAIL UNDER NEW JERSEY LAW .......................................... 7

CONCLUSION ............................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Alsteen v. Wauleco, Inc.*,
  335 Wis.2d 473, 802 N.W.2d 212 (App. 2011) ........................................................ 6

*Arcelik A.S v. E. I. du Pont De Nemours & Co.*,
  2018 WL 1401327 (D. Del. Mar. 20, 2018) ............................................................. 2

*Ayers v. Jackson Twp.*,
  106 N.J. 557 (1987) .................................................................................................. 8

*Ball v. Joy Techs., Inc.*,
  958 F.2d 36 (4th Cir. 1991) ...................................................................................... 6

*Caronia v. Philip Morris USA, Inc.*,
  22 N.Y.3d 439 (2013) ............................................................................................... 6

*City of Philadelphia v. Beretta U.S.A. Corp.*,
  277 F.3d 415 (3rd Cir. 2002) .................................................................................... 7

*CLEAResult Consulting, Inc. v. EnerNOC, Inc.*,
  2017 WL 4638592 (D. Del. Oct. 16, 2017) .............................................................. 1

*Clinton v. Enter. Rent-A-Car Co.*,
  977 A.2d 892 (Del. 2009) ......................................................................................... 3

*Curl v. Am. Multimedia, Inc.*,
  187 N.C.App. 649, 654 S.E.2d 76 (2007) ................................................................ 6

*Graboff v. The Collern Firm*,
  2010 WL 4456923 (E.D. Pa. Nov. 8, 2010) ............................................................. 2

*Henry v. Dow Chem. Co.*,
  473 Mich. 63 (2005) ................................................................................................. 5

*In re Asbestos Litig.*,
  2017 WL 3600418 (Del. Super. Ct. Aug. 18, 2017) ................................................. 7

*Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*,
  2004 WL 2758672 (D. Del. Dec. 2, 2004) ............................................................... 1

*Lowe v. Philip Morris USA, Inc.*,
  344 Or. 403, 183 P.3d 181 (2008) ............................................................................ 6

*M.G. ex rel. K.G. v. A.I. DuPont Hosp. for Children*,
  393 F. App'x 884 (3d Cir. 2010) .............................................................................. 6

*Mauro v. Raymark Indus., Inc.*,
  116 N.J. 126, 561 A.2d 257 (1989) .......................................................................... 9

*Mergenthaler v. Asbestos Corp. of Am.*,
 480 A.2d 647 (Del. 1984) ................................................................................................ 6

*Metro-N. Commuter R. Co. v. Buckley*,
 521 U.S. 424 (1997) ........................................................................................................ 4

*Nutt v. A.C. & S., Inc.*,
 466 A.2d 18 (Del. Super. Ct. 1983) ................................................................................ 6

*Parker v. Brush Wellman, Inc.*,
 377 F. Supp. 2d 1290, 1302 (N.D. Ga. 2005) ................................................................ 5

*Paz v. Brush Engineered Materials, Inc.*,
 949 So.2d 1 (Miss. 2007) ................................................................................................ 5

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
 710 F. Supp. 2d 458 (D. Del. 2010) ................................................................................ 1

*Schweitzer v. Consolidated Rail Corp.*,
 758 F.2d 936 (3rd Cir. 1985) .......................................................................................... 4

*Sinclair v. Merck & Co.*,
 195 N.J. 51, 948 A.2d 587 (2008) .................................................................................. 8

*Sinnott v. Thompson*,
 32 A.3d 351 (Del. 2011) ................................................................................................. 3

*Theer v. Philip Carey Co.*,
 133 N.J. 610, 628 A.2d 724 (1993) ..................................................................... 8, 9, 10

*Tumlinson v. Advanced Micro Devices, Inc.*,
 2010 WL 8250792 (Del. Super. Ct. July 23, 2010) ....................................................... 1

*Wood v. Wyeth-Ayerst Lab'ys, Div. of Am. Home Prod.*,
 82 S.W.3d 849 (Ky. 2002) .............................................................................................. 5

*Zazzali v. Hirschler Fleischer, P.C.*,
 482 B.R. 495 (D. Del. 2012) .......................................................................................... 2

## Statutory Authorities

La. Civ. Code Ann. Art. 2315(B) ............................................................................................ 5

I. **DISCOVERY IS NOT NECESSARY TO DETERMINE THAT DELAWARE LAW GOVERNS PLAINTIFF'S CLAIMS**

As discussed in Croda's opening brief, Delaware law governs Plaintiff's claims because Delaware has the "most significant relationship" to this dispute. (Mot. at 4-6.) Delaware courts conduct a two-part test for determining choice of law. First, the court must consider whether an actual conflict of law exists. *Tumlinson v. Advanced Micro Devices, Inc.*, 2010 WL 8250792, at *1 (Del. Super. Ct. July 23, 2010). Plaintiff concedes that there may be at least one "significant variance" between Delaware and New Jersey law in the states' approach to medical monitoring claims. (Opp. at 4.) Where—as is the case here—a conflict exists, the court then applies the "most significant relationship" test to determine which state's law applies in a tort case, taking into account: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Tumlinson*, 2010 WL 8250792, at *1.

In its opposition brief, Plaintiff argues that discovery is needed to apply the "most significant relationship test." (Opp. at 4.) This is incorrect; discovery is not justified here. The allegations in the complaint and any additional "facts" relevant to the choice of law analysis are straightforward and not reasonably in dispute. Courts routinely make choice of law decisions at the motion to dismiss stage. *See, e.g., Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.,* 710 F. Supp. 2d 458, 478 (D. Del. 2010) (determining which substantive law applies to each claim before reaching the merits of the motion to dismiss); *CLEAResult Consulting, Inc. v. EnerNOC, Inc.*, 2017 WL 4638592, at *4 (D. Del. Oct. 16, 2017) (same); *Integral Res. (PVT) Ltd. v. Istil Grp., Inc.*, 2004 WL 2758672, at *2 (D. Del. Dec. 2, 2004), *aff'd,* 155 F. App'x 69 (3d Cir. 2005) (determining choice of law before addressing the sufficiency of a complaint).

Discovery is only allowed for choice of law at the motion to dismiss stage when the claims and choice of law analysis require it based upon choice of law factual complexity—not present here. In *Graboff v. The Collern Firm*, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010), cited by Plaintiffs, the court recognized that in those particular circumstances, the "choice of law analysis is fact-intensive and context specific." Similarly, in *Zazzali v. Hirschler Fleischer, P.C.*, the court deferred making a choice of law decision "[d]ue to the complexity of the analysis[.]" 482 B.R. 495, 517 (D. Del. 2012). The allegations in *Zazzali* involved a bankruptcy trustee for a group of real estate investment firms filing claims for civil RICO, fraud, and conspiracy against an investment firm and unidentified John Does 1-10. *Id.* The corporations involved—and investors who were allegedly defrauded—were scattered throughout the U.S. *Id.* at 517. Finally, Plaintiff cited *Arcelik A.S v. E. I. du Pont De Nemours & Co.*, as an example of a case where the court ordered discovery before deciding choice of law. (Opp. at 5.) In *Arcelik*, the Plaintiff (a Turkish company) asserted claims against DuPont (a Delaware corporation) and its subsidiaries in India and China for a series of fires caused by dryers used in consumers' homes worldwide. 2018 WL 1401327, at *1 (D. Del. Mar. 20, 2018). In *Arcelik,* the court allowed discovery to inform the choice of law between countries because the disputed facts were unquestionably more complex than the "facts" related to choice of law question presented here. *Arcelik*, 2018 WL 1401327, at *9.

Here, the facts related to choice of law are not reasonably in dispute and, as a consequence, the choice of law analysis is straightforward. The injury alleged in the Complaint is exposure to EtO in New Castle, Delaware. (Compl. ¶¶ 1, 4.) Every member of the class was exposed to EtO *in Delaware* when they lived near Croda's Atlas Point plant. (*Id.* ¶¶ 8, 62.) The place where the conduct causing the alleged injury occurred was also in Delaware, as the EtO was emitted from a

Delaware plant.  (Compl. ¶ 28.)  Croda is incorporated in Delaware, Plaintiff Baker is a Delaware citizen, and all class members must have resided in Delaware for at least one year as defined by the Plaintiff in the Complaint to qualify as a class member.  (Compl. ¶¶ 8, 9, 62.)  Although some of the class members have moved out of Delaware during the decades-long class period, the relationship between Croda and every class member is defined by Plaintiffs in the complaint as taking place only in Delaware.  *See Sinnott v. Thompson*, 32 A.3d 351, 354 (Del. 2011) (noting that the place where the relationship between the parties is centered receives "particular weight" in a choice of law analysis).  Plaintiff argues in its Opposition brief that it is "pure conjecture" to say that this is a case involving Delaware residents suing a Delaware corporation.  (Opp. at 5.)  However, Plaintiff chose to bring a Class Action on behalf of current and former Delaware residents—the class definition itself limits class members to persons who have resided in Delaware for at least one year.  (Compl. ¶ 62.)

Plaintiff asserts that since Croda has its corporate offices in New Jersey, "[i]t is entirely reasonable to infer that Defendant, having its headquarters in New Jersey, exercised control of the Atlas Point facility, and made the decisions with regard to levels of production of EtO and inadequate emissions control from New Jersey."  (Opp. at 5).  These made up facts, even taken as true, would not change the outcome of the multi-factor choice of law test, because all the actual factors weigh in favor of applying Delaware law.  In any case, "[f]or personal injury actions, the law of the state where the injury occurred is presumed to control[.]"  *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).  Any injury from exposure to EtO occurred in Delaware, and should therefore be evaluated under Delaware law.  This is not a close or even realistically disputed factual issue.

II.     PLAINTIFF'S CLAIMS FAIL UNDER DELAWARE LAW

All of Plaintiff's claims fail under Delaware law because Delaware does not recognize exposure to a toxic substance, without more, as an actionable injury.[1] Plaintiff argues that the harm caused by exposure to EtO is a compensable injury because Plaintiff and Class Members have a current, higher risk of disease. (Opp. at 6) As discussed in Croda's opening brief, Delaware has not recognized exposure to a toxic substance—without developing any related disease—as an actionable injury. (Mot. at 8-12.) In its opposition, Plaintiff did not identify any Delaware cases where exposure without disease qualified as an actionable injury.

Plaintiff seeks to avoid application of Delaware law leading to dismissal by pointing to three states that have allowed recovery of medical monitoring costs without proof of physical injury. (Opp. at 12). As a threshold matter, other states' decisions are not controlling or precedential as to whether Delaware allows plaintiffs to recover medical monitoring costs without proof of an underlying injury. Further, these three states are actually outliers. Most jurisdictions that have considered the issue do not permit recovery of medical monitoring damages unless actual injury—such as symptoms or disease—has already been established. *See, e.g., Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424, 438 (1997) ("an exposed plaintiff can recover related reasonable medical monitoring costs if and when he develops symptoms"); *see also Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936, 942 (3rd Cir. 1985) (holding "that subclinical injury resulting from exposure to [toxins] is insufficient to constitute the actual loss or damage to

---

[1] Plaintiff's independent claim for medical monitoring fails for the same reason. Plaintiff asserts that "[w]hether medical monitoring is an independent cause of action or remedy under Delaware law is an academic exercise that has no practical effect on the outcome of the Motion." (Opp. at 9.) This is simply incorrect: Claim No. VI in the Complaint is an independent claim for medical monitoring. Delaware does not recognize medical monitoring as an independent cause of action (*see* Mot. at 10-12), and Claim No. VI therefore fails under Delaware law.

plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law"). This is also the right outcome because it permits those with an injury from exposure to file suit but prevents class cases (such as this one) from proceeding based on nothing more than the existence or the use of a substance permitted under regulatory law that has exposure risk.

For example, in 2005 the Michigan Supreme Court declined to permit an award of medical monitoring damages for a class of plaintiffs who had not "suffered any present physical harm" as a result of exposure to dioxin, emphasizing that determining eligibility for participation in a medical monitoring program "involves the consideration of a number of practice questions and the balancing of a host of competing interests—a task more appropriate for the legislative branch than the judiciary." *Henry v. Dow Chem. Co.*, 473 Mich. 63, 91 (2005). In 2002, the Supreme Court of Kentucky considered, and rejected, a claim for medical monitoring for a plaintiff who had been exposed to asbestos, but had not developed symptoms of a related disease. *Wood v. Wyeth-Ayerst Lab'ys, Div. of Am. Home Prod.*, 82 S.W.3d 849, 859 (Ky. 2002). The Kentucky Supreme Court in *Wood* stated that "having weighed the few potential benefits against the many almost-certain problems of medical monitoring, we are convinced that this Court has little reason to allow such a remedy without a showing of present physical injury." *Id.* "Traditional tort law militates against recognition of such claims, and we are not prepared to step into the legislative role and mutate otherwise sound legal principles." This is consistent with the holding of many other states that have determined that exposure without actual injury is not sufficient to support a claim for medical monitoring damages. *See, e.g., Parker v. Brush Wellman, Inc.,* 377 F. Supp. 2d 1290, 1296, 1302 (N.D. Ga. 2005) (plaintiffs who claimed only "subclinical" and "cellular" effects from beryllium exposure did not plead "actionable injuries under applicable tort doctrine . . . [and] failed to state a claim"); La. Civ. Code Ann. Art. 2315(B); *Paz v. Brush Engineered Materials, Inc.*, 949 So.2d

1, 3 (Miss. 2007); *Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439 (2013); *Curl v. Am. Multimedia, Inc.*, 187 N.C.App. 649, 654 S.E.2d 76, 81 (2007); *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 183 P.3d 181, 183 (2008); *Ball v. Joy Techs., Inc.*, 958 F.2d 36, 39 (4th Cir. 1991) (applying Virginia law); *Alsteen v. Wauleco, Inc.*, 335 Wis.2d 473, 802 N.W.2d 212, 218–19 (App. 2011).

The fact remains that Delaware has not recognized claims or damages for medical monitoring without an independent physical injury. In 1984, Delaware's Supreme Court affirmed a decision to dismiss a claim for medical monitoring where the spouses of workers who had developed asbestosis alleged that they had been exposed to asbestos fibers when they laundered their husbands' work clothes. *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 25 (Del. Super. Ct. 1983), *aff'd sub nom, Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984). The plaintiffs in *Nutt* claimed "a physical nexus with asbestos fiber through the handling of their husband's clothing." *Id.* Even though their complaint alleged physical exposure to asbestos fibers, the court did not allow their claim to move forward since the plaintiffs did not present "a demonstrable physical change in bodily condition." *Nutt*, 466 A.2d at 26. On appeal, the Delaware Supreme Court affirmed that "a claim for the expenses of medically required surveillance . . . fails to state a claim upon which relief can be granted **when there is no present physical injury**." *Mergenthaler*, 480 A.2d at 649. More recently, the Third Circuit considered whether the Delaware Supreme Court would recognize an independent claim for medical monitoring and concluded that such holding "requires several 'leaps' from the current state of the law generally, let alone Delaware law." *M.G. ex rel. K.G. v. A.I. DuPont Hosp. for Children,* 393 F. App'x 884, 891 (3d Cir. 2010).

Here, all class members by definition cannot be ill or have any disease process associated with EtO exposure. (Compl. ¶¶ 62-63, stating that "all persons who have been currently diagnosed

- 6 -

with cancer or illness, disease or disease process of any kind caused by EtO" are excluded from the Class.)  Class-wide fear or risk of developing a disease in the future is simply not actionable under Delaware law.  If any class member has developed or later develops a "disease or disease process of any kind caused by EtO", that individual can bring a claim at that time.  *See, e.g.*, *In re Asbestos Litig.*, 2017 WL 3600418, at *1 (Del. Super. Ct. Aug. 18, 2017) (a person who *develops an injury* as a result of exposure to a toxic substance can bring a claim "when the plaintiff is chargeable with knowledge that his condition is attributable to [toxic] exposure.").  Plaintiffs' medical monitoring damages theory based on *exposure* would be an impermissible expansion of Delaware state law, and cannot properly be reached by this Court.  *See City of Philadelphia v. Beretta U.S.A. Corp.,* 277 F.3d 415, 421 (3rd Cir. 2002) ("it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent").  This Court should therefore dismiss all of Plaintiff's claims for failure to state a claim under Delaware law.

III.   PLAINTIFF'S CLAIMS FAIL UNDER NEW JERSEY LAW

Plaintiff's claims also fail under New Jersey law because they do not plead the prerequisites to recover for either medical surveillance or enhanced risk.  While New Jersey law does permit medical monitoring damages as a remedy when actual injury exists (in certain narrow cases), it does not recognize medical monitoring (as pled here) as an independent cause of action.  Plaintiff asserts in its Opposition that "medical surveillance" and "enhanced risk" are distinct claims and remedies under New Jersey law.  (Opp. at 10.)  Although the Complaint is vague about whether it seeks recovery for "medical surveillance" or "enhanced risk,"[2] Plaintiff's claims fail under both the "medical surveillance" or the "enhanced risk" standard in New Jersey.

---

[2] Each Count of the Complaint alleges that Plaintiff and Class Members "presently suffer, and will continue to suffer, a present *increased risk* of illness, disease or disease process, and the resulting present need to incur the cost of reasonably medically necessary diagnostic testing . . .
(Continued . . .)

Plaintiff has not stated a claim for "enhanced risk" because the Complaint does not allege that Plaintiff and Class Members are more likely than not to develop disease as a result of EtO exposure. In New Jersey, "recovery for enhanced risk of contracting a disease due to exposure to toxic chemicals is only possible upon proof that it is more probable than not (the rule of reasonable medical probability) that the plaintiff will develop the disease." *Sinclair v. Merck & Co.,* 195 N.J. 51, 60, 948 A.2d 587, 592 (2008). As discussed in Croda's opening brief, the Complaint fails to allege that Plaintiff and Class Members are more likely than not to develop a disease associated with EtO exposure, and their claims therefore fail. (Mot. at 18-20.)

To the extent that Plaintiff seeks recovery for "medical surveillance," those claims fail for lack of an underlying injury. "In New Jersey, "medical surveillance damages" are available as "a special compensatory remedy" that "is not easily invoked." *Theer v. Philip Carey Co.*, 133 N.J. 610, 627, 628 A.2d 724, 733 (1993). Although medical surveillance damages were once awarded in a mass action to plaintiffs "who had been victimized by a public entity" in the 1987 decision *Ayers v. Jackson Twp.*, 106 N.J. 557, 605 (1987), the *Ayers* holding has been limited by subsequent case law. *See Sinclair v. Merck & Co.*, 195 N.J. 51, 61 (2008). The Supreme Court of New Jersey in *Sinclair* recognized that medical surveillance damages—such as those awarded in *Ayers*—were available "to plaintiffs who have suffered increased risk of cancer when directly exposed to a defective or hazardous product like asbestos, ***when they have already suffered a manifest injury or condition caused by that exposure***, and whose risk of cancer is attributable to that exposure." *Sinclair*, 195 N.J. at 61 *citing Theer*, 133 N.J. at 626. In short, the New Jersey Supreme Court

---

for the early detection of illness[.]" (*See, e.g.*, Compl ¶¶ 80, 89, 102, 109, 117, 121.) Count VI of the Complaint, titled "Medical Monitoring, seeks an award of "the quantifiable costs of [ ] a ***monitoring regime***," including "[m]onitoring procedures that makes early detection of [ ] cancers possible and beneficial." (Dkt. 1 ¶¶ 118-123.) Further, the Request for Relief includes a fund to pay medical monitoring costs. (*Id.* at 25-26.)

has limited medical surveillance damages to cases where plaintiffs ***have already suffered a manifest injury*** separate and apart from their exposure to a toxin.

Exposure alone is not sufficient to support medical surveillance damages under New Jersey law. An analysis of two asbestos cases in New Jersey makes this distinction clear. In *Mauro v. Raymark Indus., Inc.*, a worker who had been exposed to asbestos fibers at work sued for medical surveillance damages. 116 N.J. 126, 129, 561 A.2d 257, 259 (1989). The record showed that he had developed pleural thickening of his lungs, a physical condition "that was directly caused by asbestos." *Id.* at 129-30. The New Jersey Supreme Court in *Mauro* held that:

> [W]e need not and do not reach the question whether exposure to toxic chemicals without physical injury would sustain a claim for emotional-distress damages based on a reasonable fear of future disease, such a damage claim is clearly cognizable where, as here, plaintiff's exposure to asbestos has resulted in physical injury.

*Mauro*, 116 N.J. at 137. In a subsequent case, *Theer v. Philip Carey Co.*, a woman alleged that she had been exposed to asbestos by handling her husbands' work clothes containing asbestos fibers. *Theer v. Philip Carey Co.*, 133 N.J. 610 (1993). The plaintiff in *Theer* sought medical surveillance damages for diseases linked to asbestos exposure. *Id.* at 627–28. The New Jersey Supreme Court rejected the plaintiff's medical surveillance damages, stating that "[i]f a plaintiff is exposed to a [toxin] in an indirect manner, ***and, further, has not suffered from any injury or condition relating to that exposure***, it becomes increasingly difficult for courts and juries to determine the direct correlation between the indirect exposure and any future risk of injury." *Id.* at 627 (emphasis added). "Plaintiff did not suffer from any injury or condition clearly related to asbestos exposure, "and "was a heavy smoker." *Id.* "Thus, there may be multiple factors that contribute to any future injuries that she may have." *Id.* "The New Jersey Supreme Court in *Theer* then declined Plaintiff's claim for medical surveillance damages, holding that "[w]e . . . conclude that medical surveillance damages are not available for plaintiffs who have not experienced direct

and hence discrete exposure to a toxic substance *and who have not suffered an injury or condition resulting from that exposure*." *Theer*, 133 N.J. at 628.

The New Jersey Supreme Court was presented with two medical surveillance claims just four years apart. In *Mauro*, where the plaintiff had manifested symptoms caused by exposure (*i.e.*, pleural thickening), the court awarded medical surveillance damages. In *Theer*, where the plaintiff did not have any current physical injury, the court declined to award medical surveillance damages. The New Jersey Supreme Court explicitly held that exposure without actual injury is not enough to recover medical surveillance damages—rather, the direct exposure must be coupled with "an injury or condition resulting from that exposure." *Theer* at 133 N.J. at 628. The Complaint specifically excludes any Class Members that may have suffered any "injury or condition resulting from [their] exposure" to EtO. Thus, their claims for medical surveillance fail under New Jersey law.

## CONCLUSION

For these reasons, Croda respectfully requests that the Court enter an order to dismiss this case for failure to state a claim under Rule 12(b)(6).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Kenneth J. Nachbar*
Kenneth J. Nachbar (# 2067)
Miranda N. Gilbert (# 6662)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
knachbar@morrisnichols.com
mgilbert@morrisnichols.com
   *Attorneys for Defendant*

- 11 -

OF COUNSEL:

Stephen A. Swedlow
Athena D. Dalton
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL  60606
(312) 705-7400
stephenswedlow@quinnemanuel.com
athenadalton@quinnemanuel.com

October 22, 2021