IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CATHERINE BAKER, individually and
on behalf of all others similarly situated

        *Plaintiff,*

   v.                             No. 1:20-cv-01108-SB

CRODA INC.

        *Defendant.*

---

Kimberly Ann Evans, Kyle John McGee, Kelly L. Tucker, GRANT & EISENHOFER, P.A., Wilmington, Delaware; Frank M. Petosa, Marcio W. Valladares, Michael Ram, Rene F. Rocha, T. Michael Morgan, MORGAN & MORGAN, Fort Lauderdale, Florida.

                                           *Counsel for Plaintiff.*

Kenneth J. Nachbar, Miranda N. Gilbert, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, Delaware; Zi-Xiang Shen, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; Athena D. Dalton, Stephen A. Swedlow, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Chicago, Illinois.

                                           *Counsel for Defendant.*

---

**MEMORANDUM OPINION**

November 23, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Every day, many Americans come into contact with chemicals that might harm them. Catherine Baker and her neighbors are among them. They are not sick now but worry that they might be later. Fearing an increased risk of disease is understandable, but it is a legal injury in only a few states. Because Delaware is not one of them, I must dismiss Baker's claims.

## I. BACKGROUND

Croda Inc. owns a Delaware chemical plant that uses ethylene oxide, a known carcinogen. Compl. ¶¶ 6, 33. In 2018, Croda's plant leaked thousands of pounds of ethylene oxide into the surrounding neighborhood. *Id.* ¶ 37. Although Croda reacted quickly, residents worried that they had inhaled the chemical and now fear they will get cancer. *Id.* ¶¶ 25, 37, 49.

One resident, Baker, brought a class action on behalf of her neighbors, alleging strict liability, public and private nuisance, negligence, willful and wanton conduct, and medical monitoring. *Id.* ¶¶ 62, 73–123. She admits that no neighbor "ha[s] been currently diagnosed with cancer or illness … of the kind caused by [ethylene oxide]." *Id.* ¶ 63. But she says they all suffer "a[n] increased risk of illness." *Id.* ¶¶ 80, 89, 102, 117; *accord id.* ¶¶ 109, 121.

Now Croda moves to dismiss these claims. It says that the mere risk of disease alone is not a compensable tort injury. D.I. 32, at 3. I agree. Delaware law applies here, and it does not recognize this claimed injury. Because this problem disposes of all the tort claims brought by this class, I dismiss them without prejudice.

## II. DELAWARE LAW APPLIES

Before addressing the merits, I must decide whether Delaware or New Jersey law applies.

Why does this matter? New Jersey law recognizes independent claims for medical monitoring where Delaware law may not. D.I. 32, at 4. *Compare M.G. ex. rel. K.G. v. A.I. Dupont Hosp. for Children*, 393 F. App'x 884, 892 (3d Cir. 2010), *with Sinclair v. Merck & Co.*, 948 A.2d 587, 591 (N.J. 2008). And New Jersey might have a different view of claims for increased risk of disease. *Compare Sinclair*, 948 A.2d at 592 (noting that plaintiffs can recover for increased risk if they are "more likely than not" to develop a disease), *with United States v. Anderson,* 669 A.2d 73, 78 (Del. 1995) (suggesting the opposite in dicta).

Since I sit in Delaware, I will rely on its choice-of-law rules to decide this issue. In doing so, I ask which state has the "most significant relationship" to the tort. *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 467 (D. Del. 2010). Here, that is Delaware. *See State Farm Mut. Auto. Ins. v. Patterson*, 7 A.3d 454, 457–58 (Del. 2010). A corporation incorporated in Delaware and operating a chemical plant in Delaware leaked chemicals into a Delaware neighborhood.

Baker's objections do not convince. Because Croda's headquarters are in New Jersey, she says, "[i]t is entirely reasonable to infer that [Croda] … made the decisions" about using ethylene oxide "from New Jersey." D.I. 37, at 5. Even so, Delaware has a far closer link to these claims. Baker tries to delay this ruling by asking for discovery. She notes that in complex cases, courts sometimes delay choosing the applicable law until the record is more developed. D.I. 37, at 4–5; *see, e.g.*, *Arçelik A.Ş v. E.I. du Pont*

3

*de Nemours & Co.*, 2018 WL 1401327, at *8–9 (D. Del. Mar. 20, 2018) (delaying a ruling in a case involving international companies and worldwide injuries). This is not such a complex case. So I will not delay ruling that Delaware law applies.

### III. INCREASED RISK IS NOT AN INJURY

On to the merits. At this stage, I take all of Baker's factual assertions as true and ask if they state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). All tort claims require an injury. Restatement (Second) of Torts § 7 (1965). But in Delaware, Croda argues, an increased risk of illness, without more, does not suffice. D.I. 32, at 8.

True, Delaware has not explicitly held that—most cases Croda cites reject the related but distinct claim for fear of disease. *See Brzoska v. Olson*, 668 A.2d 1355, 1362 (Del. 1995) ("[D]amages for claims of emotional distress or mental anguish … are recoverable only if [an] underlying physical injury is shown."); *Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647, 651 (Del. 1984) ("In any claim for *mental anguish*, … an essential element of the claim is that the claimant have a present physical injury." (emphasis added)). But to hold otherwise here would fly in the face of clear signals in Delaware tort law.

For one, the Delaware Supreme Court has said as much in dicta. In *Anderson*, that court held that plaintiffs bringing medical malpractice claims could recover for increased risk when that risk was tied to a physical injury. 669 A.2d at 78. By contrast, no one can recover by "claiming that exposure to toxic substances … has created an increased risk of harm not yet manifested in a physical disease." *Id.* at 77.

4

Plus, Delaware tort law presupposes that plaintiffs will bring suits after they suffer physical symptoms, not before. For one, Delaware lets toxic tort plaintiffs bring separate claims for different diseases caused by one exposure. *See Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1134 (Del. Super. Ct. 1985), *aff'd sub nom. Keene Corp. v. Sheppard*, 503 A.2d 192 (Del. 1986). And states that do so generally allow recovery only for manifested disease. 1 Toxic Torts Litig. Guide § 4:12 (2020); *see, e.g., Anderson v. W.R. Grace & Co.*, 628 F. Supp. 1219, 1231 (D. Mass. 1986). Plus, the statute of limitations for toxic-tort claims starts to run when a plaintiff begins to feel physical effects, suggesting that they are needed in every toxic-tort case. *Brown v. E.I. duPont de Nemours & Co., Inc.*, 820 A.2d 362, 368 (Del. 2003). So this putative class cannot recover damages for increased risk.

Baker counters that recovery for increased risk is allowed by several states that, like Delaware, rely on the Second Restatement of Torts. *See* D.I. 37, at 11–14. This is not enough.Most courts reject increased-risk claims. *See* 1 Toxic Torts Litig. Guide § 4:12 (2020). Understandably so. "[T]ens of millions of individuals may have suffered exposure to substances" that might never result in harm. *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424, 442 (1997). Allowing lawsuits for any risk of illness would open the floodgates to "limitless and endless" litigation. *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 621 (6th Cir. 2005) (internal quotation marks omitted). Without a contrary directive from the Delaware Supreme Court, I will not open those floodgates here.

So this class cannot recover damages for the risk of diseases that they do not yet have. And because each tort requires an injury, none of Baker's torts survives this flaw.

\* \* \* \* \*

The class cannot show it has suffered any injury under Delaware law, so I dismiss all its claims without prejudice. Baker may amend to show that the class has suffered physical injury.

But I will not certify this question to the Delaware Supreme Court. Del. R. Sup. Ct. 41. Delaware law already points to my holding today, so certification would not be efficient. *See Deutscher Tennis Bund v. ATP Tour, Inc.*, 2013 WL 4478033, at \*1 n.1 (D. Del. Aug. 20, 2013).